IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JAMES HENRY ABEL,

    Petitioner,

    v.

DIRECTOR, CALIFORNIA DEPARTMENT OF CORRECTIONS,

    Respondent.

_____/

No. C 10-05276 RS

**ORDER GRANTING MOTION TO DISMISS**

## I. INTRODUCTION

Respondent Director of California Department of Corrections moves to dismiss the federal habeas corpus action filed by federal prisoner James Henry Abel on the ground that it is untimely. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one-year statute of limitations to file a federal habeas corpus action from the date one's conviction becomes final. *See* 28 U.S.C. § 2244(d). Abel's conviction became final on February 27, 2001, but he did not bring his habeas petition until November 19, 2010. He argues that (1) he is entitled to delayed commencement of the limitations period, (2) the limitations period should be tolled, and (3) that he is factually innocent of certain charges and, therefore, no statute of limitations applies to his claims. For the reasons set forth below, respondent's motion to dismiss is granted.

## II. BACKGROUND

In January of 1998, Abel invited the ten-year-old daughter of a family friend, hereinafter Jane Doe One, to attend a slumber party at his home because his nieces were in town for the weekend. When Jane Doe One arrived at his home, his nieces were not there. Over the course of the weekend, Abel made her dress up in costume outfits and pose for pictures. In some of the photographs, she was partially nude. Abel also took a video of himself engaged in sex acts with her, which at trial he argued were simulated. The video depicts Jane Doe One with white rope tied around her hands and a chain tied to her ankle. Abel also touched Jane Doe One on the leg while she was falling asleep and then removed her panties during the course of the night.

In April or May 1997, a friend of Abel's brought his three-year-old daughter, Jane Doe Two, to Abel's house, where they were left alone. During this time, Abel recorded a video of himself touching Jane Doe Two's genitalia. The video also depicts Jane Doe Two manipulating her own genitalia at his direction.

The evidence presented at Abel's trial consisted of photographs, videotapes, other physical evidence recovered from Abel's home and storage facilities, and testimony of a doctor who had examined Jane Does One and Two. Abel testified that he never tied or bound Jane Doe One and that he never penetrated either victim with his penis or hands. He admitted touching the outside of Jane Doe One's genitalia with his hand. The trial judge made findings of fact, after reviewing the visual evidence and hearing testimony, that Abel had penetrated both girls and had tied or bound Jane Doe One in the course of the sexual assault.

After Abel waived his right to a jury trial, the California Superior Court for Monterrey County found him guilty of three counts of aggravated sexual assault of a child, four counts of penetration with a foreign object upon a child, six counts of lewd acts upon a child, and two counts of forcible lewd conduct with a child, *See* Cal. Penal Code § 269(a)(1), (a)(5); Cal. Penal Code § 289(j); Cal. Penal Code § 288(a); Cal. Penal Code § 288(b). The trial judge also found true special allegations, for which Abel received sentencing enhancements, that he committed these offenses against multiple victims and that he tied or bound Jane Doe One. *See* Cal. Penal Code § 667.61. On

March 11, 1999 he was sentenced to an indeterminate term of forty years to life and a determinate term of thirty-two years to run concurrently with the indeterminate term.

The California Court of Appeal affirmed his convictions and sentence on September 19, 2000. The California Supreme Court denied his petition for review on November 29, 2000. He did not petition for a writ of certiorari in the Supreme Court of the United States, therefore, his judgment became final when his deadline to do so passed on February 27, 2001. *See Bowen v. Roe*, 188 F.3d 1157, 1159-60 (9th Cir. 1999); *see also* Sup. Ct. R. 13.

On February 19, 2009, Jane Doe One was deposed in connection with a civil lawsuit against Abel arising out of his crimes against her. During her deposition, she stated that she did not remember engaging in sexual intercourse with Abel and that the filmed intercourse was only simulated. Further, she testified that although a rope and chain were used to simulate a tying or binding, her movement was never restricted in any way.

Abel's state habeas petition was pending from September 23, 2009, until it was denied by the California Supreme Court on November 10, 2010. Abel filed his federal habeas petition on November 19, 2010, presenting four claims for relief: (1) actual innocence of some elements for which his sentence was enhanced; (2) ineffective assistance of counsel for failure properly to investigate his case; (3) ineffective assistance of counsel for failure to file a motion to suppress evidence found during the search of his home, truck, and storage shed; and (4) violation of his Sixth Amendment right to a jury trial on the sentencing enhancements. The government moves to dismiss this habeas petition as untimely.

### III. LEGAL STANDARD

AEDPA governs federal habeas petitions, such as Abel's, filed after April 24, 1996. Under AEDPA, habeas petitions must be filed within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1). After exhausting state court remedies, the petitioner may petition the Supreme Court for a writ of certiorari. "[W]hen a petitioner fails to seek a writ of certiorari from the United States Supreme Court, the AEDPA's one-year limitations period begins to run on the date the ninety-day period defined by Supreme Court Rule 13 expires." *Bowen v. Roe,* 188 F.3d 1157, 1159

(9th Cir. 1999). Under AEDPA, determining whether claims are time-barred "is a threshold question that . . . must [be] decide[d] *before* . . . reach[ing] the merits of a habeas petitioner's claims." *Ford v. Gonzalez*, 683 F.3d 1230, 1238 (9th Cir. 2012).

In some cases, the limitations period may start on a later date, including when: (1) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (2) the factual predicate of the claim could have been discovered through the exercise of due diligence. *See* 28 U.S.C. §§ 2244(d)(1), (d)(1)(C)-(D). If the starting date is completion of direct review, the statute of limitations applies to the entire application, but if the starting date is determined under another date, it is applied on a claim-by-claim basis. *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005).

The Supreme Court has also determined that the one year statute of limitations may be subject to equitable tolling. *See Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S. at 418); *accord Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006). In addition, "a credible claim of actual innocence constitutes an equitable exception to AEDPA's limitations period, and a petitioner who makes such a showing may . . . have his otherwise time-barred claims heard on the merits." *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011).

## IV. DISCUSSION

Abel filed his habeas petition with this Court over nine years after his judgment became final. He argues, however, that he is entitled to delayed commencement of the limitations period or, in the alternative, to equitable tolling. Finally, Abel avers that he is actually innocent of the rape charges and the tying and binding enhancement, claims which are not subject to any statute of limitations. For the reasons stated below, these arguments fail and Abel's petition is untimely.

A. <u>Delayed Commencement of the Limitations Period</u>

    *i. Newly Discovered Statements and Ineffective Assistance of Counsel*

Abel contends that Jane Doe One's deposition testimony constitutes newly uncovered statements forming an exculpatory factual predicate supporting his claim at trial that he was not guilty of tying and binding her or of the sexual assault charges requiring penetration. Abel avers that because his trial counsel failed to uncover this factual evidence during his trial, February 19, 2009, was the first point at which he reasonably could have uncovered these facts. Thus, Abel argues that the limitations period should be delayed until the date of her deposition, February 19, 2009. *See* 28 U.S.C. § 2244(d)(1)(D).[1]

The one-year limitations period starts on the date on which "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See* 28 U.S.C. § 2244(d)(1)(D). The time begins "when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." *Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2000) (quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)). "Due diligence does not require the maximum feasible diligence, but it does require reasonable diligence in the circumstances." *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012) (internal quotations and citations omitted).

Here, Abel knew of the factual predicate of his habeas claims related to the tying and binding enhancement and penetration prior to Jane Doe One's deposition. The factual predicate for these claims are Abel's actions against Jane Doe One in January 1998. Videos of them were played during trial. Abel testified that his penis never penetrated Jane Doe One and that he had never tied or

---

[1] Although Abel's federal habeas petition was filed more than one year after the date of Jane Doe One's deposition, he argues that it is timely, because he filed his state habeas petition within one year of the newly discovered facts and the statute of limitations period is tolled during "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *See* 28 U.S.C. § 2244(d)(2). Assuming, *arguendo*, that the state habeas petition was "properly filed" and "pending" in state court starting on September 23, 2009, the time during which the state habeas petition was under review does not count against his one year statute of limitations for the bringing of his federal habeas petition. As such, only slightly over thirty-two weeks elapsed on the statute of limitations after the Jane Doe One deposition before Abel brought his federal habeas petition.

bound her. Therefore, Abel actually presented his innocence arguments at trial. Although Jane Doe One never testified at the trial, "Section 2244(d)(1)(D) does not restart the time when corroborating evidence becomes available . . . As a matter of law, new evidence supporting a claim actually made at or before trial cannot form the basis of a new period under § 2244(d)(1)(D)." *Escamilla v. Jungwirth*, 426 F.3d 868, 871 (7th Cir. 2005); *see Weaver v. Alameida*, 225 Fed. Appx. 598, 599 (9th Cir. 2007). Abel avers that his appointed trial counsel failed to investigate his claims diligently, leading to the oversight of Jane Does One's testimony. Abel, however, "cannot get traction by recharacterizing this as a challenge to counsel's conduct [because] [a] complaint about that decision could have been presented to the state judiciary on appeal or by a prompt collateral attack." *See Escamilla*, 426 F.3d at 871.

Since Jane Does One's subsequent deposition testimony does not constitute a factual predicate of the relevant claims, an investigation into due diligence is unnecessary here. Abel's contention that Section 2244(d)(1)(D) delays commencement of the statute of limitations until February 2009, the date of Jane Doe One's deposition testimony, fails. As the statute of limitations began running on February 27, 2001 and is not subject to delayed commencement under 2244(d)(1)(D), Abel's claim that his counsel's ineffective assistance prevented her exculpatory testimony from being presented at his trial is also untimely because he filed it over eight years after the conclusion of the limitations period.

>    *ii.    Apprendi Claim*

When Abel's conviction was not yet final, the Supreme Court announced a new constitutional right in *Apprendi v. New Jersey*: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 488-90 (2000) (finding unconstitutional a state law permitting a judge to impose extended term of imprisonment if he found by a preponderance of the evidence that the crime committed was a "hate crime"). Abel argues that under *Apprendi*, he had the right to a jury trial on the tying and binding sentencing enhancement, which he did not waive, and because his appeals were still pending when *Apprendi* was decided, it applies retroactively to his case.

A person in state custody has one year to file a habeas corpus petition in federal court after "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). *Apprendi* announced the new constitutional right requiring facts that increase the penalty for a crime beyond the statutory maximum to be found by a jury beyond a reasonable doubt. *Apprendi*, 530 U.S. at 488-90. Therefore, only individuals whose cases were on collateral review at the time *Apprendi* was decided on June 26, 2000, can avail themselves of delayed commencement of the limitations period pursuant to 28 U.S.C. § 2244(d)(1)(C); *see United States v. Sanchez-Cervantes*, 282 F.3d 664, 665 (9th Cir. 2002) (holding that *Apprendi* announced a new constitutional rule of criminal procedure that does not apply retroactively to cases on initial collateral review).

*Apprendi* was decided on June 26, 2000, before Abel's judgment became final. Abel's appeal was still pending before the California Court of Appeal at the time *Apprendi* was decided. Nevertheless, Abel did not raise his *Apprendi* claim on direct appeal. *See Teague v. Lane*, 489 U.S. 288, 305-10 (1989) (holding that new rules should be applied to cases on direct appeal in which the judgment is not yet final). Nor did he file for post-conviction relief based on *Apprendi* within a year of the entry of final judgment in his case. Since Abel's petition was not on collateral review at the time *Apprendi* was decided, § 2244(d)(1)(C) does not apply; however, even if § 2244(d)(1)(C) did delay commencement of the limitations period for one year, until June 26, 2001, Abel still filed his petition over eight years after the AEDPA statute of limitations had run. Nothing in § 2244(d)(1)(C) revives his plainly untimely claim.

After *Apprendi* was decided, the Supreme Court reaffirmed its core holding in *Blakely v. Washington*, 542 U.S. 296 (2004). In *Blakely,* the Supreme Court held that Washington's sentencing guidelines violated the defendant's right to a jury trial under *Apprendi*, because they allowed a judge to impose a sentence above the sentencing guidelines range if the judge found compelling reasons for doing so. *Id.* at 299-305 ("[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*."). It is well-established that *Blakely* announced a new constitutional rule and

therefore, does not apply retroactively to cases, like Abel's, that were final before it was decided. *See Schardt v. Payne,* 414 F.3d 1025 (9th Cir.2005).

*Cunningham v. California*, 549 U.S. 270 (2007), applied *Blakely* in striking down California's determinate sentencing law. Abel argues that it was not until the decisions in *Butler* and *Gomez* in 2008 and 2009, holding that *Cunningham* and other cases construing *Apprendi* could be applied retroactively, that § 2244(d)(1)(C) was triggered and his one year statute of limitations on the *Apprendi* claim began to run. *See Butler v. Curry*, 528 F.3d 624 (9th Cir. June 9, 2008); *In re Gomez*, 199 P.3d 574 (Cal. Feb. 2, 2009).[2]

In interpreting an analogous provision for federal prisoners seeking to file under § 2255, the Supreme Court has held that the one-year limitations period begins to run on the date on which the Court recognized the new right being asserted, not the date on which that right was made retroactive. *See Dodd v. United States*, 545 U.S. 353, 357 (2005). Therefore, *Butler* and *Gomez*, decisions that simply opined on the retroactivity of a particular right, do not restart the limitations period under § 2244(d)(1)(C).

Even if *Gomez* could be construed to delay commencement of the limitations period, Abel's *Apprendi* claim still fails. In *Butler*, the Ninth Circuit held that *Cunningham v. California*, 549 U.S. 270 (2007), in striking down California's determinate sentencing law, did not announce a new rule. *See id.* at 628-29. The court maintained that the result in *Cunningham* was clearly established by Supreme Court precedent, specifically in *Blakely*. *Id.* at 628-29, 636 ("*Cunningham* did not add any new elements or criteria for determining when a state statute violates the Sixth Amendment. It simply applied the rule of *Blakely* to a distinct but closely analogous state sentencing scheme.") (citations omitted). Therefore, *Cunningham* could be applied retroactively to those cases that were not final after the decision in *Blakely*. *Id.* at 628-29. In *Gomez*, the California Supreme Court held

---

[2] Although *Butler* and *Gomez* were decided more than one year before Abel filed his habeas petition in federal court, the Court will assume, *arguendo*, that the statute of limitations was tolled starting on September 23, 2009, the date on which Abel filed a state habeas petition. *See* note 1, *supra*. Therefore, only the time that passed between the decision in *Gomez* on February 2, 2009 and Abel's filing of a state habeas petition on September 23, 2009, plus the eight days that elapsed between the final state court denial of Abel's habeas petition and his filing of a federal habeas petition, approximately thirty-five weeks, counts against the statute of limitations. *See id.*

that "*Cunningham* applies retroactively to any case in which judgment was not final at the time the decision in *Blakely* was issued." *In re* Gomez, 199 P.3d at 580. Clearly, the judgment in Abel's case was final prior to the decision in *Blakely* on June 24, 2004. Abel was on notice after the decision in *Apprendi* that he could have sought relief on Sixth Amendment grounds within one year of the finality of his judgment.

In a final effort to revive his *Apprendi* claim, Abel avers that the rules announced in *Butler* and *Gomez* constitute a new factual predicate that would delay commencement of the statute of limitations in his case. *See* 28 U.S.C. § 2244(d)(1)(D). Abel's argument fails because a change in controlling law, when announced in a case where the petitioner is not a party, does not constitute a factual predicate for purposes of section 2244(d)(1)(D). *See Shannon v. Newland*, 410 F.3d 1083, 1088-89 (9th Cir. 2005) ("If a change in (or clarification of) state law, by a state court, in a case in which [petitioner] was not a party could qualify as a 'factual predicate,' then the term 'factual' would be meaningless."). Even if *Butler* and *Gomez* announce new principles of law that are helpful to Abel's claims, this legal clarification does not change any of the facts of his case. *Cf. Johnson v. United* States, 544 U.S. 295, 298-302 (2005) (holding that a delayed statute of limitations was appropriate where a state-court decision vacated state convictions that were relied upon to enhance a federal prisoner's sentence, because the factual predicate for the enhancements was eliminated). Since *Butler* and *Gomez* potentially clarified the law, not the facts, of Abel's case, he is not entitled to delayed commencement of the statute of limitations on the theory that those cases formed a factual predicate for his habeas claims. *See Shannon*, 410 F.3d at 1088.

B. Equitable Tolling

Abel next argues that he is entitled to equitable tolling because he diligently pursued his rights and his lack of education, lack of financial means, and dishonest conduct on the part of his counsel at the trial and appellate levels constituted extraordinary circumstances that prevented him from filing his habeas petition. "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S.

at 418); *accord Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006). The diligence required to establish entitlement to equitable tolling is "reasonable diligence." *Holland*, 130 S. Ct. at 2565.

The Ninth Circuit has held that the petitioner bears the burden of showing that this "extraordinary exclusion" applies to him. *Miranda v. Castro*, 292 F.3d at1065. The petitioner also must show that "the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time," rather than his own lack of diligence. *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotation marks and citations omitted). Where a petitioner fails to show "any causal connection" between the grounds upon which he asserts a right to equitable tolling and his inability to file a federal habeas application timely, the equitable tolling claim will be denied. *Gaston v. Palmer*, 417 F.3d 1030, 1034-35 (9th Cir. 2005). Whether a petitioner is entitled to equitable tolling is determined by detailed examination of the facts. *See Lott v. Mueller*, 304 F.3d 918, 923 (9th Cir. 2002). Equitable tolling is typically unavailable and "'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Miranda v. Castro*, 292 F.3d at 1063 (citing *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).

### i. Ineffective Assistance of Counsel

Abel argues that his appointed trial counsel's failure properly to investigate his case and failure to file a motion to suppress evidence obtained during allegedly illegal searches of his home constituted extraordinary circumstances that should warrant the application of equitable tolling. This argument, however, confuses the merits of his claim with the equitable tolling analysis. He also contends that his appellate counsel's failure to challenge trial counsel's decision to refrain from bringing a motion to suppress was an extraordinary circumstance that should toll the statute of limitations. Although Abel may have had underlying claims for ineffective assistance of trial and appellate counsel, he does not demonstrate that their actions were an extraordinary circumstance that *caused* him to fail to file a timely habeas petition. *See Gaston*, 417 F.3d at 1034-35 (holding that petitioner must show a causal connection between the alleged extraordinary circumstance and the inability to file a habeas petition). Appointed counsels' purportedly poor performances had no impact on Abel's ability to file a timely habeas petition.

Abel further argues that his appointed appellate counsel engaged in deliberately dishonest conduct, by misleading him about the availability of collateral review rights, which prevented him from timely filing his petition. Specifically, Abel claims that after the California Supreme Court declined to review his case, "his [appellate] attorney fraudulently claimed that there was no further recourse in the courts, dishonestly representing to Mr. Abel that his right to pursue his claims was not forever gone." Ptr.'s Op. Mot. to Dis. 12. Abel avers that from the moment he was aware this statement of the law was incorrect, he diligently pursued his rights through his current counsel. Finally, Abel contends that together his lack of knowledge of the legal system, his ninth grade education, and his lack of access to financial resources, in combination with appellate counsel's misrepresentations, constitute extraordinary circumstances that prevented him from timely filing his petition.

Abel's contention that appellate counsel's deliberate misrepresentations about his legal recourse constitute an extraordinary circumstance is without merit. There is no constitutional right to counsel in non-capital federal habeas cases. *Miranda v. Castro*, 292 F.3d 1063, 1068 (9th Cir. 2002). An appellate counsel's error in failing to advise his client properly about habeas rights does not constitute an extraordinary circumstance because appellate counsel has no duty to advise his client regarding habeas relief. *Id.* Further, even if appellate counsel undertakes to give advice on habeas relief, "because [petitioner] ha[s] no right to the assistance of his appointed appellate counsel regarding post-conviction relief, it follows that he d[oes] not have the right to that attorney's 'effective' assistance, either." *Id.* at 1068 (citing *Miller v. Keeney*, 882 F.2d 1428, 1431-32 (9th Cir. 1989)). Thus, Abel's appellate counsel had no duty to provide information related to habeas relief, much less accurate information. Abel's bare contentions that appellate counsel deliberately or maliciously undertook to deceive him are irrelevant since appellate counsel was not under a duty or agreement to represent him in the post-conviction relief process.[3]

---

[3] Abel's reliance on *Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003) is inapposite. In that case, petitioner had retained counsel specifically for the purpose of representing him in the filing of a habeas petition. Here, Abel did not retain his appellate counsel to represent him in collateral review proceedings. Even if Abel could establish that appointed appellate counsel had a duty to assist in post-conviction relief procedures, he has not provided evidence suggesting that appellate counsel's conduct was sufficiently egregious to constitute an extraordinary circumstance. Abel simply claims

Nor do Abel's averments that he has only a ninth grade education, lacks legal knowledge, and could not previously afford representation constitute extraordinary circumstances.[4] "[A] *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling." *Rasberry v. Garcia*, 448 F.3d 1150 (9th Cir. 2006). Since AEDPA clearly requires promptness, "*pro se* representation alone or procedural ignorance" are merely excuses for inattentiveness, not extraordinary circumstances. *See Johnson v. U.S.*, 544 U.S. 295 (2005). In addition, numerous courts have specifically held that education ending in the ninth grade is not an extraordinary circumstance. *See, e.g.*, *Pelaya v. Cate*, No. 10-2270, 2011 WL 976771, at *5-7 (C.D. Cal. Jan. 18, 2011); *Aparicio v. McDaniel*, No. 07-0427, slip op. at 1, 7-8 (D. Nev. Mar. 30, 2012). Since there is no right to counsel in non-capital federal habeas petitions, Abel's financial inability to hire a lawyer is not an extraordinary circumstance. *See Bonin v. Vaquez*, 999 F.2d 425, 429 (9th Cir. 1993). Petitioners commonly proceed *pro se* in habeas cases. *See Aparicio*, No. 07-0427, slip op. at 7.

"To apply the doctrine in 'extraordinary circumstances' necessarily suggests the doctrine's rarity." *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008 (9th Cir. 2009) (citing *Harris v. Carter,* 515 F.3d 1051, 1055 (9th Cir. 2008). None of the circumstances described by Abel meet the extraordinary standard, even in combination. Since there are no extraordinary circumstances that prevented Abel from filing a timely federal habeas petition, it is unnecessary to determine if Abel has been diligently pursuing his rights. *Rasberry*, 448 F.3d at 1153 (holding that the diligence element did not need to be addressed because no extraordinary circumstance existed).

---

that appellate counsel told him he had exhausted his rights after the direct review process was complete. *Compare Holland*, 130 S. Ct. at 2564 (holding that "garden variety" negligence or "excusable neglect" did not constitute an extraordinary circumstance); *with Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003) (holding that attorney misconduct was an extraordinary circumstance when the attorney was retained for the purpose of filing a habeas petition a year in advance of a deadline, but failed to do so even after being repeatedly contacted by the petitioner and his mother and a grievance was filed with the state bar association).

[4] Petitioner's reliance on *In re Moss*, 175 Cal. App. 3d 913 (1985) and *In re Saunders*, 472 P.2d 921 (Cal. 1970) is likewise misplaced. These cases involve state habeas actions and do not address equitable tolling.

C. Statutory Tolling - 2244(d)(2)

Next, Abel erroneously contends that statutory tolling during the pendency of his state habeas corpus petition somehow revives the limitations period on his federal habeas claims. There was no state habeas petition under review until September 23, 2009, over eight years after Abel's conviction became final. *See* supra Parts IV.A-B. Therefore, because the statute of limitations had already expired on all of his federal claims by the time he filed his state habeas corpus petition and "section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed," Abel is not entitled to statutory tolling. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).

D. Actual Innocence

Finally, Abel argues that he is actually innocent of the sentencing enhancement for tying and binding a victim and the sexual assault charges requiring penetration, based on Jane Doe One's 2009 deposition, which Abel characterizes as newly discovered evidence. As mentioned above, "a credible claim of actual innocence constitutes an equitable exception to AEDPA's limitations period, and a petitioner who makes such a showing may . . . have his otherwise time-barred claims heard on the merits." *Lee v. Lampert*, 653 F.3d 929, 932 (9th Cir. 2011). To prevail on actual innocence, a petitioner must provide sufficient proof such that the new evidence implicates a "fundamental miscarriage of justice." *Id.* at 937 (quoting *Schlup v. Delo*, 513 U.S. 298 (1995)). Such evidence consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial. *See Lee*, 653 F.3d at 938. The new evidence must be so compelling that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* (quoting *Schlup*, 513 U.S. at 327). The habeas court must look at all of the evidence, old and new, regardless of whether it was admissible at trial and make a probability determination about what a reasonable, properly instructed juror would conclude. *Lee*, 653 F.3d at 938; *House v. Bell*, 547 U.S. 518 (2006).

Assuming that Jane Doe One's deposition constitutes new reliable evidence, it does not rise to the level of being probable that no reasonable juror would have convicted Abel. Videotapes depicting the offenses were played during the trial. Both the physician who examined Jane Doe One

and a Monterey County Sheriff's investigator reviewed the tapes and determined that there was penetration of both Jane Doe One and Two. In addition, the examining physician stated that physical examination of Jane Doe One was consistent with an act of penetration. Further, Monterey Sheriff's investigator Larry Bryant testified that the videotapes showed that there was what appeared to be a white rope tied around Jane Doe One's hands during a portion of the filming. Abel testified on his own behalf during the trial, refuting the interpretations of the investigators and experts.

In the 2009 deposition, Jane Doe One stated that she had no recollection of being penetrated by Abel, but she did not refute that it had happened. She remembered a rope around her hands during one of the video sessions, but testified that it did not restrain her movements. Jane Doe One never saw the videos and was deposed eleven years after the incidents took place. She was ten years old when the crime occurred. Jane Doe One admitted numerous times that she could not remember the exact series of events or what exactly transpired. This deposition testimony provides a minimal amount of support to Abel's testimony at trial. There, the trier of fact credited the prosecution's evidence over Abel's testimony. The trier or fact specifically found that penetration occurred and that Jane Doe One had a rope tied and knotted around her wrists, meeting the requirements of the sentencing enhancement in that she lacked free movement of her hands had she tried to escape. Since the new evidence provided by Jane Doe One's deposition testimony, particularly that she could not remember most of the specifics of the events that occurred, is less than compelling, it does not suggest that a juror would have reached a different result had the deposition been presented along with the evidence already in the record. *See Smith v. Hall*, 466 Fed. Appx. 608, 609 (9th Cir. 2012). In short, Abel does not present evidence of actual innocence such that the merits of his time-barred claims can be revived.

## V. CONCLUSION

For the foregoing reasons, respondent's motion to dismiss is granted.

IT IS SO ORDERED.

Dated: 3/27/13

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE